IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                      No.  CR-09-2962 WJ

MARVIN ANTONIO AGUILAR-LOPEZ,
a/k/a/ MARVIN ANTONIO LOPEZ-AGUILAR,

    Defendant.

# MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING,
## and
## DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

THIS MATTER comes before the Court on Defendant's Motion to Withdraw Guilty Plea, filed May 28, 2013 **(Doc. 262)** and also on whether an evidentiary hearing is necessary before ruling on Defendant's motion.  Having reviewed the parties' briefs and applicable law, the Court finds that there is no good cause for an evidentiary hearing, and that Defendant's request to withdraw his plea is not well-taken and shall be denied.

## BACKGROUND

This prosecution arises in connection with the armed robbery and felony murder of Stephanie Anderson at the Denny's restaurant in Albuquerque, New Mexico, on June 20, 2009, and the armed robbery of the Lone Star Steakhouse & Saloon in Albuquerque, New Mexico, on June 13, 2009.  Doc. 7.  On September 30, 2011, Defendant entered a guilty plea before United

States Magistrate Judge Robert H. Scott to the following two counts of the second superseding indictment: Count 3, charging a violation of 18 U.S.C. §§1951(a) and (b)2.[1]  On May 28, 2013, Defendant filed a motion to withdraw his guilty plea.

On June 27, 2013, the Court entered a partial ruling on Defendant's motion to withdraw his plea, rejecting that part of Defendant's argument which was premised on Rule 11(d)(1) because it was foreclosed under Tenth Circuit precedent.  Doc. 265 at 2-3.   The Court deferred ruling on Plaintiff's alternative argument that the Court should permit him to withdraw his guilty plea under Fed. R. Crim. P. 11(d)(2)(B), which allows for a defendant to withdraw a guilty plea if he can show a fair and just reason for requesting the withdrawal.  The Court required the parties to submit supplemental briefing whether there is good cause to hold an evidentiary hearing before the Court ruled on the final portion of Defendant's motion to withdraw his guilty plea.  Both parties filed supplemental briefs supporting their positions.  Docs. 266 & 267.

## DISCUSSION

Defendant contends that an evidentiary hearing is necessary if genuine issues are raised concerning his awareness of the significance of the appellate right he was waiving (which would implicate the general validity of his guilty plea); and concerning whether his counsel unduly pressured him to enter a guilty plea (which would affect the voluntariness of the plea).  To justify an evidentiary hearing a defendant must present some significant questions concerning the voluntariness or general validity of the plea.  *U.S. v. Gonzales,* 970 F.2d 1095, 1100 (2nd Cir. 1992).   Moreover, where the record shows that the defendant was informed of the consequences of his plea, no hearing is required.  *Baker v. United States*, 404 F.2d 787, 790 (10th Cir. 1968).

I.    **Defendant's Request for Evidentiary Hearing**

---

[1]  The Indictment bases Count 3 on a violation of "18 U.S.C. §§ The Indictment bases Count 3 on a violation of  18 U.S.C. §§ 1951(a) and 2." The Court assumes the omission of (b) was inadvertent, and inserts the correct reference here.

2

In order to determine whether genuine issues exist concerning the validity and voluntariness of Defendant's plea, the Court turns to the plea proceedings. The record in this case belies Defendant's claims that a hearing is necessary to inquire into the validity or voluntariness of his plea.  Defendant's contentions are inconsistent with the statements he made at the plea hearing on September 30, 2011, based on the Plea Transcript (Govt's Ex. 1, "Plea Tr."). With regard to the waiver of his appellate rights, Defendant verified during the plea colloquy that he had enough time to review the plea agreement in his native language of Spanish with his lawyer before he signed it.  Plea Tr. at 6:4-7, and that he understood the consequences of entering his guilty plea.  *Id.* at 6:8-10; 7:1-25; 8:1-10; 8:16-25.  Defendant stated that he understood that he was waiving his appellate rights.  *Id.* at 9:2-11.  He confirmed that he was satisfied with his legal counsel (*Id.* at 5:13-15) and that he responded in the affirmative when asked if he had reviewed certain sections of the plea agreement "thoroughly" with his attorney and whether he understood those provisions. *Id.* at 8:16-25; 9:1-11.

Defendant's allegation that he received only a brief explanation of the contents of the plea agreement also does not justify the need for an evidentiary hearing.  Defendant does not specify exactly what part of the plea agreement was explained to him in detail, and—more importantly—what was not.  The plea agreement had been translated into Spanish (*see* Doc. 243 at 5, ¶3) and during the plea colloquy, Defendant indicated that he was satisfied that he had understood its terms.  Plea Tr. at 6:8-10.  Similarly, Defendant's claim that he was pressured into pleading guilty does not raise any questions which merit further inquiry in the form of a hearing.  This claim is also contradicted by the record.   Defendant confirmed that no one had threatened or coerced him to plead guilty, and that he was pleading guilty voluntarily.  Plea Tr. at 6:11-19.

Nothing in the record signals to the Court that further inquiry is needed regarding the validity and voluntariness of Defendant's guilty plea. Defendant has not offered any reason to overcome the strong presumption of verity in his statements at the plea hearing:

> . . . representations of the defendant . . . as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *U.S. v. Powell,* 354 F.3d 362, 371 (5th Cir. 2003) (no hearing warranted where defendant fails to set forth facts sufficient to support motion to withdraw plea).

In response to the Court's Order to Show Cause, Defendant also submitted evidence to support his argument that a hearing is necessary to elicit evidence that his guilty plea was neither knowing nor voluntary. Exhibit A is a Defendant's letter to the Court translated from English to Spanish, and dated July 12, 2013. In that letter, he states that he perjured himself by answering in the negative when Magistrate Judge Scott asked whether he had been treated for any mental illness or addiction to drugs or alcohol. Defendant claims that he was in fact receiving treatment for his "mental decline" at the time he pleaded guilty, and that a hearing is required so that Ms. Tina Sanchez, his social worker (his behavioral health provider employed at the detention facility where Defendant is detained) can attest to that fact. Exhibit B is a letter from Ms. Sanchez dated the same day of Defendant's letter to the Court, July 12, 2013, addressed "To Whom It May Concern." The letter was requested by Defendant as a "Behavioral Health opinion of his state of being at the time of signing his plea agreement." Ex. B at 2. Ms. Sanchez noted that Defendant's "mental health appeared to continue to decline" around the time Defendant pleaded

guilty on September 30, 2011, and opines that Defendant "is currently incompetent to assist in his own defense." Ex. B at 2.

Defendant's claim of perjury concerning treatment for mental illness does not sufficiently rebut the presumption of veracity in his statements at the plea colloquy.  Ms. Sanchez' letter states that Defendant was housed in segregation for 33 months and was moved to the general population when "it became apparent that continued segregation housing was detrimental to [Defendant's] well-being. Ex. B at 1.  She describes Defendant's mental "decline" while in segregation as a disassociation from present reality; a "decompensation" of his daily living skills; "depressed mood, flattened affect, and reported external stimulus . . . such as voices talking to him. Ex. B at 1.  However, these signs and symptoms were not unknown to the forensic psychologists who conducted the formal mental competency evaluations.  *See, e.g.,* Doc. 243 at 6 (Defendant reporting "that he hears voices that others do not seem to hear. . . .).

The Court rejects Defendant's attempts to go another round on the issue of his competency, or to seek a hearing on that issue.  Neither of the exhibits submitted by Defendant holds any weight bearing on his competency to enter into a guilty plea.  Ms. Sanchez' letter is based on her memory of Defendant's demeanor a year and a half earlier, a time which is also prior to the time the Court ordered Defendant's competency evaluation.  The Court's determination regarding Defendant's competency was made following formal investigation and reports submitted by forensic professionals whose opinions were formally sought out, and who actually conducted these tests.[2]  Ms. Sanchez' view as a Behavioral Health Provider on

---

[2]  Ms. Sanchez suggests that the tests were given in English, which posed a problem for Defendant.  It is not clear where Ms. Sanchez got her information, or if the information was self-reported by Defendant.  At any rate, the accuracy of Ms. Sanchez' information is highly questionable, since the reports from the forensic psychologists who administered show that the Spanish versions of some tests, where applicable, were given instead of the English version.  Doc. 243 at 1 ('Structured Interview of Reported Symptoms (SIRS), Spanish Version").

Also, the Court finds no reason to consider, and has no use for, Ms. Sanchez' opinion regarding Defendant's inability to complete various psychological tests following his plea (Ex. B at 2), when well-credentialed forensic

Defendant's competency does not give the Court any reason whatsoever to be swayed from this conclusion, nor does the Court find Ms. Sanchez sufficiently credentialed to second-guess the results of two competency evaluations performed by mental health professionals who, unlike Ms. Sanchez, are properly credentialed mental health professionals who know what they are doing.

The Court's inquiry on the issue of Defendant's competency has been careful and thorough.  The Court ordered an initial psychological evaluation on March 9, 2012 (Doc. 222). The results from the report based on that evaluation were "indeterminate," and the report suggested that Defendant was malingering and was putting forth "low effort" to complete the tasks.  Doc. 243 (Preliminary Report).  The Court ordered a second competency evaluation on December 4, 2012 (Doc. 247) to be performed at a Bureau of Prisons Medical facility.  A second psychological evaluation was done on February 15, 2013 (Doc. 252)   Following this second report, the Court held a hearing and inquired as to the parties' positions concerning the results of the report.  Defense counsel had no dispute with the report's conclusion that Defendant was competent to proceed.  Doc. 268 at 5.  The Court subsequently found that the Defendant was competent to proceed.  Doc. 258.  Thus, Defendant has not offered any evidence or reason to deviate from the Court's finding on Defendant's competency nor has Defendant shown that further investigation is needed.

Defense counsel also advises the Court that a conflict of interest now exists between Defendant and his attorneys.  Defendant's request for a hearing so that he may withdraw his guilty plea is premised on counsel's lack of effectiveness in representing him.  As a result, his attorneys find it difficult to advance Defendant's interests at this point, since they may have to defend their own performances as his attorneys at the same time.  This issue has become moot

---

psychologists conducted competency examinations and submitted their own reports regarding Defendant's competency.

with the Court's finding that no hearing is necessary, and thus no need for defense counsel to defend their performances at such a hearing.  Further, there was no basis for conflict and no assertion of conflict at the time Defendant entered his guilty plea.   The only question which remains before the Court at this point is whether there are grounds to allow Defendant to withdraw his guilty plea.  As the Court discusses next, there is no merit to Defendant's motion.

Accordingly, Defendant's request for an evidentiary hearing is DENIED.  Defendant's allegations of counsel's lack of performance in explaining the terms of the plea agreement and of the waiver of appellate rights are conclusory and inconsistent with the statements he made during the plea colloquy.  Nothing in the record or in Defendant's arguments alerts the Court for a need to elicit any further evidence or testimony surrounding the circumstances leading to Defendant's entry of a guilty plea.

## II.     Defendant's Motion to Withdraw Plea

The Court's analysis of Defendant's motion to withdraw his plea addresses issues similar to those discussed in its consideration of Defendant's request for an evidentiary hearing. Defendant gives two reasons for wanting to withdraw his plea:  first, he did not realize the importance of his right to appeal until after he had agreed and signed the Plea Agreement, and second, that he believes his guilty plea was induced by stress, worry and fear resulting from psychological pressure that he received from his lawyers and the prosecutors.

In its Response, the Government relies on the factors articulated by the Tenth Circuit when determining whether a fair and just reason for withdrawal of a defendant's guilty plea exists, which are:

(1) whether the defendant has asserted his innocence;
(2) whether withdrawal would prejudice the government;
(3) whether the defendant delayed in filing his motion, and if so, the reason for the delay;
(4) whether withdrawal would substantially inconvenience the court;

(5) whether close assistance of counsel was available to the defendant;
(6) whether the plea was knowing and voluntary; and
(7) whether the withdrawal would waste judicial resources.
*U.S. v. Yazzie,* 407 F.3d 1139, 1142-43 (10th Cir. 2005).[3] .

The Court finds the Government's arguments regarding the above factors persuasive in that they are supported by the record. In his letter to the Court, translated from Spanish to English, Defendant stated that his attorney "failed to make me see and understand fully the point by point content of my agreement." Doc. 262-1 at 8. Following that sentence is the statement:

> I also want to make clear that with all of what I have said that I am not saying nor trying to say that my lawyer, Benjamin Gonzales, failed to read or explain the plea to me. In fact, he gave me a brief explanation of the content of the plea.

*Id.* Other than the waiver of his appellate rights, Defendant does not specify what part of the plea he does not understand as a result of his attorney failing to give him a "point by point" explanation. At the change of plea hearing ("plea hearing"), Defendant indicated that he had enough time to have the plea agreement read to him and had enough time to review it with counsel before he signed it. Plea Tr. at 6. Defendant's statements at the plea hearing confirm that he entered into a guilty plea knowingly and voluntarily. Judge Scott conducted a methodical and careful colloquy with Defendant and ensured that the plea was knowing and voluntary. Judge Scott confirmed that Defendant understood his rights. Plea Tr. at 4:2-16. Judge Scott verified that the Defendant was not under the influence of any medicine, drugs, or alcohol, that he was not recently treated for mental illness or addiction to drugs or alcohol, and that he understood the purpose of the hearing. *Id*. at 4:23-25, and 5:1-6.[4] Defendant was informed of

---

[3] Defendant does not address the *Yazzie* factors, except for the factor challenging whether the plea was knowing and voluntary, and thus the Court sees no need to conduct an analysis on all other factors. However, the Court agrees with Defendant's arguments on those other factors, including the discussion on a waste of judicial resources (which the Court touches upon in finding there is no need for further delay).
[4] As the Court has previously discussed, Defendant's attempt to back away from the answers he gave at the hearing by claiming he committed perjury has no merit.

the factual basis for the plea, nature of the charges, and the associated penalties and stipulations. Plea Tr. at 10:8-22; and 7:1-25, 8:1-2, 8:16-25, 9:1, and 9:7-17.

Defendant is hard put to ask the Court to consider either his lack of experience with the legal process, or the fact that Spanish is his primary language, as factors which limited his ability to understand the terms of the plea agreement. The Second Superseding Indictment was read to Defendant in Spanish. Plea Tr. at 5:7-9. A Spanish interpreter interpreted the proceedings from English to Spanish. Doc. 261 at 1. The plea agreement was also translated from English to Spanish. Doc. 243 at 5, ¶3.[5] The Consent to Proceed before United States Magistrate Judge in a Felony Case was also read to Defendant in Spanish. Plea Tr. at 5:16-19.

    A.    <u>Waiver of Appellate Rights</u>

Defendant does not contend that his attorney never discussed the waiver of appeal. Instead, he states that he did not realize "the importance of the right to appeal until I agreed to and signed the plea agreement." Doc. 262-1 at 7. Defendant offers no specific legal argument as to what additional information counsel is required to provide on waiver of appellate rights—besides informing a client that he has the right to appeal a conviction and is waiving that right upon pleading guilty—before a guilty plea can be considered knowing or voluntary. *See United States v. Libretti*, 38 F.3d 523, 529 (10th Cir. 1994) (A defendant's guilty plea must be knowing, voluntary, and intelligent). The Court is having difficulty envisioning what further information defense counsel could have imparted to Defendant before Defendant would be satisfied that he understood the significance of this waiver. This is not a situation where Defendant requested more information and was refused. What seems to have occurred here is that the significance of entering a guilty plea just recently began to "sink in," but even this late realization does not

---

[5] The Government also notes that Margaret Katze, one of Defendant's public defenders, speaks fluent Spanish. Doc. 263 at 16.

affect the validity of the plea. The law does not require that a defendant grasp the enormity or significance of waiving an appeal. The law simply requires that a defendant understands he is giving up the right to appeal his conviction unless the case proceeds to trial, and it is clear that Defendant received this information.

The Court agrees with the Government that Defendant's argument makes little sense. Even if it were possible for Defendant to withdraw the current plea in the hopes of striking a better bargain (and there is no indication from the Government that this is within the realm of possibility), Defendant's choices remain the same: he would give up his right to appeal, as part of the terms of *any* plea—unless he decides to proceed to trial or unless the Government is willing to accept a guilty plea without an appellate waiver, which is not the scenario in this case.

B.  Coercion

Defendant claims that he agreed to plead guilty because of "stress and pressure" from his lawyers and the prosecutors if he did not accept a plea. The obvious response to this contention is that the decision whether to plead guilty or go to trial is never without "stress and pressure" on any defendant. This is not a viable reason to allow Defendant to withdraw his guilty plea. A criminal defendant always faces the prospect of trial when he does not accept a plea, and where an impending trial means facing considerable unfavorable evidence and significant consequences, the "stress and pressure" to accept a plea is a normal reaction. Further, Defendant denied that anyone had threatened or coerced him in any way to plead guilty. Plea Tr. at 6:11-13. Thus, this second claim would not be a basis for withdrawing a plea under Rule 11(d)(2)(B).

## CONCLUSION

In sum, the Court finds and concludes that there is no good cause for an evidentiary hearing, as Defendant raises no issues which require further investigation into circumstances leading up to Defendant's entry of a guilty plea.

The Court also finds and concludes that there is no merit to Defendant's motion to withdraw his guilty plea and, accordingly, that motion is denied.

Finally, the Court notes that sentencing in this case has been vacated several times since the entry of Defendant's guilty plea.  *See* Docs. 182, 188, 207 and 234.   Where the Court has properly accepted a guilty plea, further delay would be a waste of judicial resources.  There will be no evidentiary hearing; Defendant's motion to withdraw his plea is denied, and Defendant shall be sentenced in the very near future.

**THEREFORE,**

**IT IS ORDERED** that Defendant's request for an evidentiary hearing and Defendant's Motion to Withdraw Guilty Plea **(Doc. 262)** are hereby DENIED for the reasons stated in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE